**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
LEE S. RICHARDS, IN HIS CAPACITY AS :
COURT-APPOINTED RECEIVER FOR :
WESTGATE ABSOLUTE RETURN FUND, LP, :
et al., :
:
Plaintiffs, :
:
-against- :
:
MOUNTAIN CAPITAL MANAGEMENT, :
L.L.C., MONT CAPITAL PARTNERS, L.P., :
MONT PROPERTIES, L.L.C., NEIL :
MONTELEONE, and LORA MONTELEONE, :
:
Defendants. :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/17/10

10 Civ. 2790 (RMB) (JCF)

**DECISION & ORDER**

I.      **Background**

On March 29, 2010, the Court issued an ex parte temporary restraining order ("TRO") in

this "claw back" action instituted by Lee S. Richards, the Receiver for the Westgate Funds

("Receiver" or "Plaintiffs"), in order to recapture assets that were said to be fraudulently

conveyed in connection with a Ponzi scheme orchestrated by James M. Nicholson, who pled

guilty on December 11, 2009 to securities fraud and related charges, in violation of 15 U.S.C.

§§ 78j(b), 78ff, 80b-6, & 80b-17 and 18 U.S.C. §§ 1341 & 2. (Order, dated Mar. 29, 2010;

Compl. ¶¶ 1–2.) Defendants are, respectively, Mountain Capital Management, L.L.C.

("Mountain Capital"), an "investment advisor that operates so-called 'funds of funds,' managing

funds which invest primarily in other funds, such as the Westgate Funds"; Mont Capital Partners,

L.P., a limited partnership managed by Mountain Capital; Mont Properties, L.L.C.; Neil

Monteleone, the principal of Mountain Capital; and Lora Monteleone. (Compl., dated Mar. 29,

2010 ("Compl."), ¶¶ 33–38.) The Receiver alleges that, from 2006 to 2008, Defendants received

$25.6 million from the Westgate Funds, including "more than $13.4 million of fictitious profits and fees or other unidentified payments." (Compl. ¶ 3.) According to United States Magistrate Judge James C. Francis IV, Defendants are not "alleged to be the primary wrongdoers, but rather [to have] profited as a consequence of the fraud[.]" (Report & Recommendation of U.S. Magistrate Judge James C. Francis IV, dated May 18, 2010 ("Report"), at 3.)

The TRO provided, among other things, that "sufficient and good reason having been shown including the substantial likelihood that the Receiver's asserted equitable interest in $26.6 million will be immediately and irreparably injured pending the hearing of the Receiver's application for a preliminary injunction[,] . . . each Defendant . . . is temporarily restrained, enjoined and prohibited from . . . disposing of any legal or beneficial interest in assets, property or investment funds owned, controlled by or managed by Defendant and/or its affiliates[.]" (Order, dated Mar. 29, 2010, at 2.) On April 15, 2010, the Court entered a Stipulation and Order "on consent" which provided that "the TRO is to remain in place . . . through and including . . . any . . . date to which the preliminary injunction hearing is adjourned." (Stipulation & Order, dated Apr. 15, 2010, at 2.)

On April 14, 2010, Defendants submitted an application ("Application") to modify the TRO, and requested that an amount not to exceed $850,000 (for legal fees and expenses) "be unfrozen for use in defending the Defendants in this action and any related proceedings." (Ltr. from Anthony L. Paccione, Esq. to Hon. James C. Francis, dated Apr. 14, 2010 ("Def. Br."), at 1.) And, on May 18, 2010, Judge Francis, to whom the matter had been referred, issued a Report and Recommendation ("Report") recommending that the TRO "be modified to permit . . . [D]efendants to spend no more than $500,000 on attorneys' fees and expenses, with counsel billing at rates no greater than $500 per hour or their normal hourly rates, whichever is

2

less." (Report at 3.)

The Report advised that, "[p]ursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation." (Report at 3.)  On June 4, 2010, Plaintiffs filed objections, arguing, among other things, that:  (1) "no case law exists to support amending the TRO in this civil case to release attorney's fees"; and (2) Neil Monteleone and Lora Monteleone fail to "present any evidence that they lack alternative funds with which to pay their attorney's fees." (Objections, dated June 4, 2010, at 6–8.)

**For the reasons set forth below, the Report is respectfully rejected and the Application is denied.**

## II.    Standard of Review

The Court "shall make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which an objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also Grassia v. Scully, 892 F.2d 16, 19 (2d Cir. 1989).

## III.    Analysis

The Court has conducted a de novo review of, among other things, Judge Francis's Report, Plaintiffs' Objections, the record herein, and applicable legal authorities, see Fed. R. Civ. P. 72(a), and the Court respectfully rejects the Report's recommendation that the TRO be modified to permit Defendants to spend up to $500,000 of frozen assets on attorneys' fees and expenses. (Report at 3.)

"To succeed on a motion to modify [a] freeze to permit payment of attorneys' fees and

3

other expenses, [a] defendant 'must establish that such a modification is in the interest of defrauded investors.'" Sec. & Exch. Comm'n v. Credit Bancorp Ltd., No. 99 Civ. 11395, 2010 WL 768944, at *4 (S.D.N.Y. Mar. 8, 2010) (quoting Sec. & Exch. Comm'n v. Grossman, 887 F. Supp. 649, 661 (S.D.N.Y. 1995), aff'd sub. nom. Sec. & Exch. Comm'n v. Estate of Hirshberg, 101 F.3d 109 (2d Cir. 1996). The Court evaluates an application to unfreeze assets for payment of attorneys' fees also in light of the principle that "[n]either civil nor criminal defendants have the right to use frozen investor funds to pay their counsel." Id. at *3.

First and foremost, Defendants have failed to establish that granting the Application is in the interest of the defrauded Westgate Funds investors who number approximately 400. (See Compl. ¶ 24.) Rather, to ensure that appropriate compensation can be paid to the victims in this case, the Court finds it is reasonable to maintain – not lift – the freeze order. See Sec. & Exch. Comm'n v. Current Fin. Servs., 62 F. Supp. 2d 66, 68 (D.D.C. 1999); Grossman, 887 F. Supp. at 661. The frozen assets totaling approximately $18.9 million are clearly needed to compensate the victims whose losses total (estimated) tens of millions of dollars. (See Compl. ¶ 29); see also Grossman, 887 F. Supp. at 661 ("[I]t is well-established that there is no right to use the money of others for legal services.").[1] The Court is not persuaded that the facts or conclusions of Securities and Exchange Commission v. Dowdell, 175 F. Supp. 2d 850 (W.D. Va. 2001), are applicable here. See pp. 4–5, infra.

Even assuming, arguendo, that there were sufficient funds to compensate defrauded investors, the Court likely would still not be inclined upon the facts presented to grant the Application. Defendants are represented by able counsel, KattenMuchinRosenman LLP ("KattenMuchin"), in this proceeding and the Court does not perceive an imminent danger that

---

[1]    According to the Receiver, "[a]lthough the TRO enjoined $26.6 million, only $18.9 million of those funds remain in Defendants' possession." (Objections at 6.)

Defendants will go unrepresented.[2] (See Def. Br. at 1.) Under virtually no circumstances would the Court be in a position to relieve counsel of its obligation to continue to represent corporate (or partnership) Defendants until replacement counsel had become ready, willing, and able to serve. See Lattanzio v. COMTA, 481 F.3d 137, 140 (2d Cir. 2007) ("[A] limited liability company . . . may appear in federal court only through a licensed attorney."); Fed. Home Loan Mortgage Corp. v. Berbod Realty Assocs., L.P., No. 91 Civ. 1033, 1994 WL 1060301, at *1 n.3 (S.D.N.Y. Aug. 16, 1994) ("[A] limited partnership can appear only through an attorney.") (citing Eagle Assocs. v. Bank of Montreal, 926 F.2d 1305, 1308–10 (2d Cir. 1991)).

And, Neil and Lora Monteleone failed to submit evidence that their personal assets are insufficient to pay their attorneys' fees and expenses. (See Report at 1–4); see also United States v. Payment Processing Ctr., LLC, 439 F. Supp. 2d 435, 440 (E.D. Pa. July 26, 2006) ("The focus on defendant's ability to fund a defense is an important factor in determining whether equity favors use of restrained property for defense costs.").

## IV.   Conclusion and Order

For the reasons set forth above, the Court respectfully rejects the Report and denies the Application.

Dated: New York, New York
       June 17, 2010

RICHARD M. BERMAN, U.S.D.J.

---

[2]   On April 23, 2010, Anthony L. Paccione, Esq. and Brian L. Muldrew, Esq., a partner and associate, respectively, at KattenMuchin, filed notices of appearance which state that they are "appear[ing] herein on behalf of the . . . [D]efendants." (Notices of Appearance [## 17 & 18], dated Apr. 23, 2010.) KattenMuchin has acted as [D]efendants' corporate counsel for many years." (Def. Br. at 4.)

5